UNITED STATES *v.* SMITH & NESSLE Co. *et als.* (No. 956).[1]

HERRING OR MACKEREL, PICKLED OR SALTED.

> The processes to which the fish of the importation had been subjected put them in a class apart from "fish in tin packages," as provided for in paragraph 270, tariff act of 1909. The evidence sustains the finding that the merchandise here consisted of herring or mackerel, pickled or salted, and these were dutiable as such under the *eo nomine* provisions of paragraphs 272 and 273, respectively.

United States Court of Customs Appeals, March 25, 1913.

APPEAL from Board of United States General Appraisers, G. A. 7380 (T. D. 32680).

[Affirmed.]

*William L. Wemple*, Assistant Attorney General (*Thomas J. Doherty*, special attorney, of counsel), for the United States.

*Comstock & Washburn* (*Albert II. Washburn* of counsel), *Searle & Pillsbury, Brooks & Brooks*, and *B. A. Levett* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case consists of herring and mackerel, separately packed in sealed tin cans, and severally invoiced as fresh herring, soused herring, herring in bouillon, herring in tomato sauce; fresh mackerel, soused mackerel, and mackerel in tomato sauce.

The goods were imported under the tariff act of 1909 and were classified by the collector as "fish in tin packages." They were accordingly assessed with duty at the rate of 30 per cent ad valorem under the provisions of paragraph 270 of the act.

The importers duly protested the assessment, claiming the importations to be herring and mackerel, pickled or salted, and therefore properly assessable under the *eo nomine* provisions contained respectively in paragraphs 272 and 273 of the act.

The protest was submitted upon evidence to the Board of General Appraisers, and the same was sustained. The Government now appeals from that decision.

---

The following extract from the board's decision will best define its terms and effect:

The question really to be determined is whether the particular varieties of fish involved are salted, pickled, or smoked within the meaning of the language of paragraphs 272 and 273, and we think the evidence fully sustains the following findings:

(1) That the herrings in tomato sauce and the so-called fresh herrings are herrings, salted; (2) that the mackerel in tomato sauce and fresh mackerel are mackerel, salted; (3) that the soused herrings are herrings, pickled; (4) that the soused mackerel are mackerel, pickled; (5) that the smoked herrings in bouillon are herrings, smoked.

We sustain the claims for duty at the rate of one-half of 1 cent per pound on each of the kinds of fish covered by findings 1, 3, and 5, * * *. We also sustain the claim for duty at the rate of 1 cent per pound under paragraph 273 on the fish covered by findings 2 and 4. In all other respects the protests are overruled. Decisions of the collector are modified accordingly.

The relevant parts of the paragraphs which are thus called into question read as follows:

270. Fish (except shellfish) by whatever name known, packed in oil, in bottles, jars, kegs, tin boxes, or cans, shall be dutiable as follows: * * *; all other fish (except shellfish) in tin packages, thirty per centum ad valorem; * * *.

272. Herrings, pickled or salted, smoked or kippered, one-half of one cent per pound; herrings, fresh, one-fourth of one cent per pound; * * *.

273. Fish, * * *; mackerel, halibut, or salmon, fresh, pickled, or salted, one cent per pound.

The real issue which was presented to the board was one of fact only, namely, whether or not the fish in question were herring or mackerel, pickled or salted. If they were such, they should be assessed under the *eo nomine* provisions contained in those terms in paragraphs 272 and 273, respectively. United States *v.* Rosenstein (1 Ct. Cust. Appls., 304; T. D. 21357); Ahlbrecht *v.* United States (2 Ct. Cust. Appls., 471, 474; T. D. 32226). On the other hand, if the fish were not herring or mackerel, pickled or salted, then the collector's assessment of the goods as "fish in tin packages" should prevail. The board held on the testimony with the former premise and the protest was therefore sustained. The question now submitted to the court is whether or not that decision is sufficiently sustained by the record in the case.

· In order to aid in reaching an answer to this question, the following extracts are given from the testimony of certain of the witnesses called by the importers:

Ralph W. Goldmark:

Q. Now, will you, just for my information, even though it be a repetition, describe to me, beginning at the beginning, the successive treatments of these herrings that are done up in tomato sauce, until the tin is closed?—A. Yes; these herrings are taken from the boat, brought in barrels to the factory, dumped out from the barrels on big stone or cement slabs. A man goes with a wheelbarrow, on which is a barrel of salt, and he has a big tin receptacle in his hand, and as these fish are put down on the cement floor he sprinkles these fish very copiously with the salt. Then there are two men with shovels, and while he is spreading the salt they turn the fish over, so that every part of the pile shall get its share of salt. After those fish have lain anywhere from 8 to 20, and I have known it for 25, hours in the salt, they are put in baskets, immersed in a solution of water. Then they are gutted, the heads taken off, brought in the packing rooms, put in tin cans. Then these girls go around and

add this dessertspoonful of tomato sauce or pureé or whatever you want to call it; the tins are sealed and soldered, put in a bath, as I said, probably around 210°, although I would not be positive of that.   They are allowed to sterilize for about 20 minutes; then they are taken out, and with a sharp little chisel there is an indentation or hole made in each can to allow a vacuum to form or the gases to escape.   Then they are again soldered up, immersed in hot water for about five minutes, labeled, put in boxes, and that ends it.

Q. Does the tomato sauce serve any purpose at all in the preservation of the fish?—A. No, sir; simply for flavor, as anchovy sauce, or wine, or any other sauce.

By Mr. DOHERTY. What is the preserving agency in the tomato herring put up as you have described?—A. Both the salt and sterilization.

Q. Would the salt be sufficient to preserve them without any other process?—A. I don't think so; no.

By Mr. WASHBURN. Would the heat be sufficient to preserve them without the salt?—A. No, sir.

Q. What is the amount of salt, about?   About what amount of salt is added in the first instance?—A. About 10 or 15 per cent.

ADOLPH GOLDMARK:

Q. Now, tell us how the salted herring are prepared?—A. Which kind, sir?   There are so many kinds of salted herrings, and different processes—different kinds.   There are salted herrings put up in cans, like tomato herring, herring in bouillon, herring in mustard sauce, herring in anchovy sauce—every few months a new kind and a new method of processing come up.

Q. But those are all salted herrings, are they?—A. Yes, sir; they are all fundamentally salted herrings.

\*          \*          \*          \*          \*          \*          \*

Q. Would such a process of heating or sterilization, lasting as you say about 30 minutes, be in itself sufficient to preserve the fish for the market without the addition of any salt?—A. No, sir.

Q. Would you say that the salt as well as the heat and sterilization plays an important rôle in the preserving process?—A. In the preserving process of this fish it is absolutely indispensable.

Q. Do you know of any varieties of salted herring, other than those which have been further subjected to a process of pickling and smoking and kippering, which come onto the market in packages other than tin containers?—A. No, sir.

Q. Give some of these specific kinds that come.   Give the names—the trade, commercial names?—A. They come how, sir?

Q. Salted herring that come onto the market in tin containers?—A. Tomato herring, and herring in bouillon, and herring in anchovy sauce, Worcester sauce, shrimp sauce, wine sauce.

THOMAS ROBERTSON:

Q. Then, what do you mean by salted herrings?—A. I have described the process—a herring which has been subjected to salt in the process of curing.

Q. Has anything else been done to the herring that you call salted herring, except that it has been salted?—A. Yes.

Q. Where do you draw the line between a salted herring and a pickled herring?—A. Well, I would call a pickled herring a herring which has been in brine for a period sufficiently long to enable the brine to strike through to the bone of the fish.   I would call a salted herring a herring which has been treated with salt, left in salt for a considerable time, but which has not reached the pickling process.

Q. Well, aren't salted herrings put on the market simply as the result of a salting process without anything further being done to them?—A. No; not in that way.

\*          \*          \*          \*          \*          \*          \*

Q. Is there any other way in which salted herrings are imported to this country?—A. No.

Q. Would it be practicable, or would it be possible to import them in any other way than in tins?—A. Absolutely impossible.

\*          \*          \*          \*          \*          \*          \*

By Mr. BROOKS. In your experience have you ever heard the term "salted herrings" applied commercially in this country?—A. Never.

Q. There is no such commercial term, I take it?—A. Not that I am aware of.

BENJAMIN M. SHIPMAN:

Q. As to the articles that you designate as soused mackerel; is that a pickled mackerel or smoked mackerel, or what is it?—A. It is a pickled mackerel.

\* \* \* \* \* \* \*

By Mr. WASHBURN. Tell us how they are put up for market, Mr. Shipman.—A. The mackerel are taken from the boats fresh. The heads are cut off; they are ripped— the bellies ripped, washed out, washed in a salt solution for a very short time—just to draw the blood. They are put in tins, pickled with vinegar with a certain amount of condiments added, varying according to the idea of the packer, and that vinegar is put in the tin. The tin is then sealed, and it is put in a steam or water retort, as the case may be, processed for a certain amount of time, varying sometimes according to the size of the tin and sometimes according to the packer's idea of how much it should be processed. After taking out of the steam retort it is vented so as to blow off steam, and immediately sealed again, and then put in the bath for 8 or 10 minutes, and then it is ready.

\* \* \* \* \* \* \*

Q. These soused or pickled mackerel are a well-known article in the trade or commerce of this country, are they?—A. Yes.

REGINALD S. TOBEY:

Q. Now, referring to the item invoiced as fresh herring; will you state whether you have a sample of that?—A. Yes; we have a sample of that.

Q. What is the character of that merchandise?—A. Fresh herring has no sauce added to it. The fish is caught fresh and brought into the factory and allowed to remain in a pickle of salt and water long enough to harden the same and make it satisfactory eating.

The statements appearing in the foregoing quotations were also supported by a considerable volume of other testimony which was submitted to the board on behalf of the importers. The witnesses who were thus called and examined appear to have been intelligent, experienced, and sincere.

On the other hand, the Government introduced the testimony of a large number of witnesses of like character, which testimony almost directly contradicted each and all of the statements made in the foregoing quotations. According to the Government's evidence, the herring and mackerel in tomato sauce are salted so slightly before canning as to make that factor wholly negligible in framing a description of the article for tariff purposes; and, furthermore, according to the Government's claim, the term "salted" as applied to such fish has a well-established commercial meaning, synonymous with the term "pickled," signifying the complete curing and preservation of the fish by means of salt or salt brine alone.

Nevertheless upon a consideration and comparison of all the evidence in the case the court is of the opinion that the board was justified in finding with the importers and against the claim of the Government upon the question of commercial designation, and also as to the name and character of the articles in question. Some of the contradictions which appear in the testimony probably result

from the fact that different methods of preparing and preserving such fish may prevail at different places and in different seasons of the year; and that fish of the same name may sometimes differ so much in size and condition as to require different methods of treatment.

The testimony, however, as applied to the importations, indicates that the so-called fresh herring and mackerel are, in fact, slightly salted before they are canned; that the herring and mackerel in bouillon and tomato sauce are first carefully salted, then flavored with a small amount of material, and then canned and sterilized by heat; and that the so-called soused herring and mackerel are first salted and processed and finally put up in a pickle of spiced vinegar. The salting process which is applied to the so-called fresh fish and to those in bouillon and tomato sauce is a substantial factor in their preparation; it makes the flesh of the fish firmer and thereby prevents the fish from breaking; it affects the flavor of the fish, whether subsequently cooked or not; and it aids materially in the preservation of the fish both before and after canning, if indeed it be not essential thereto.

These conclusions justify the classification which is adopted by the board in its decision.

The so-called fresh herring of the present importations had received the benefit of the process of salting, and although the process was slight in their case, yet it was sufficient to advance the article to the higher duty imposed upon salted herring as compared with fresh herring by paragraph 272. In paragraph 273 the same rate of duty applies alike to fresh and salted mackerel.

In respect to the so-called soused herring and mackerel, it seems clear that the preparation of vinegar and spices in which the fish were put up was in fact a pickle, and therefore that the classification of herring and mackerel, pickled, furnishes an *eo nomine* designation of the articles.

As to the herring and mackerel in tomato sauce, or in bouillon, it may be said that the fish were salted as the first and fundamental process in their preservation, and it was as salted fish that they were flavored by the small addition of tomato or other sauce, which changed their appearance and taste but did not essentially change their character. It was also as salted fish that they were placed in the cans and sterilized by heat. This latter process, like the salting itself, was vitally important to their preservation, nevertheless it is not inapt to describe the final product as salted fish, even though cooked. And as between the classification of herring or mackerel, salted, upon the one hand, and the classification of other fish (except shellfish) in tin packages, upon the other hand, the former description is more apt and specific for articles thus prepared and preserved.

It is true that the salting process is not the only process which was applied in the treatment and preservation of these fish; possibly it was not the most important one, but nevertheless it was a substantial one and furnishes an apt method of describing the articles in question.

It is true that pickled, smoked, and kippered herring are also generically salted herrings, but they are more narrowly and specifically distinguished by the terms pickled, smoked, and kippered, as used in the paragraph. On the other hand, the herring which are not pickled, smoked, or kippered, but which are first salted and then variously flavored with different sauces which change with the markets and the seasons, find in the term salted a description which is as clear and specific as is practicable under the circumstances. And thus a consistent meaning is attached to each of the descriptive terms used in the paragraph.

Upon a review of the record the court therefore finds that the decision of the board is sufficiently sustained by the evidence, and the same is *affirmed.*