UNITED STATES *v.* MILLER & TOKSTAD *et al.* (No. 1294). UNITED STATES *v.* MOOS & CO. *et al.* (No. 1302). UNITED STATES *v.* STROH-MEYER & ARPE CO. (No. 1324).[1]

HERRINGS UNDER PARAGRAPH 272, TARIFF ACT OF 1909.

In view of the decisions of the courts and Board of General Appraisers and in view of departmental rulings besides, it must be taken that the various small fish of the several importations come within the provision for herrings in paragraph 272, tariff act of 1909, and not within paragraph 270 of that act, as fish packed in tin boxes or cans.

United States Court of Customs Appeals, May 4, 1914.

APPEALS from Board of United States General Appraisers, G. A. 7504 (T. D. 33815), Abstract 34000 (T. D. 33848), Abstract 34389 (T. D. 34033).

[Affirmed.]

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel), for the United States.

*B. A. Levett* and *Brown & Gerry* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

Three appeals from as many decisions of the Board of General Appraisers covering importations of fish in tins.

---

[1] Reported in T. D. 34443 (26 Treas. Dec., 775).

In United States, appellant, *v.* Miller & Tokstad *et al.*, appellees, the imported merchandise consisted of the following classes: (1) Fish described in the invoices as herrings; (2) fish described in the invoices as mackerel; and (3) fish described in the invoices as sardines put up in bouillon, tomato sauce, vinegar, or mustard sauce.

In United States, appellant, *v.* Moos & Co. *et al.* (Von Bremen, Asche & Co.), appellees, the merchandise consisted of sprats and smoked sardines in tomato sauce in tins.

In United States, appellant, *v.* Strohmeyer & Arpe Co., appellees, the merchandise consisted of sprats in tomato sauce and anchovies salted and spiced in tins.

All of the merchandise above described was assessed with duty at the rate of 30 per cent ad valorem as "fish * * * packed in * * * tin boxes, or cans," under the provisions of paragraph 270 of the tariff act of 1909, which reads:

270. Fish (except shellfish) by whatever name known, packed in oil, in bottles, jars, kegs, tin boxes, or cans, shall be dutiable as follows: When in packages containing seven and one-half cubic inches or less, one and one-half cents per bottle, jar, keg, box, or can; containing more than seven and one-half and not more than twenty-one cubic inches, two and one-half cents per bottle, jar, keg, box, or can; containing more than twenty-one and not more than thirty-three cubic inches, five cents per bottle, jar, keg, box, or can; containing more than thirty-three and not more than seventy cubic inches, ten cents per bottle, jar, keg, box, or can; all other fish (except shellfish) in tin packages, thirty per centum ad valorem; fish in packages, containing less than one-half barrel, and not specially provided for in this section, thirty per centum ad valorem; caviar, and other preserved roe of fish, thirty per centum ad valorem.

As to the classes of merchandise 1 and 2, the subject of the first-stated appeal, the following stipulation was entered into:

It is hereby stipulated and agreed that the merchandise described on the invoices covered by the below-numbered protests as fried herrings in bouillon, smoked herrings in tomato sauce, smoked herrings in tomato, fat herrings in bouillon, and merchandise described as herrings in protest 558916, is herrings, smoked; that the merchandise described as herrings in tomato, tomato herrings, herrings in tomato sauce, and fresh herrings in tomato sauce is herrings, salted; and that said merchandise is of the same dutiable character as that passed on by the Board of United States General Appraisers in G. A. 7380 (T. D. 32680); * * * that the merchandise described as marinated mackerel is mackerel, pickled.

No controversy was waged in this court as to the dutiable classification of these two classes of merchandise. The decision of the Board of General Appraisers was to the effect that the herrings were dutiable at the rate of one-half of 1 cent per pound under the provision for "herrings, pickled or salted, smoked or kippered," in paragraph 272 of the tariff act of 1909, and that the mackerel were dutiable at the rate of 1 cent per pound as "mackerel, * * * pickled," under paragraph 273 of said act. This decision is in accordance with the decision of this court in Ahlbrecht & Son *v.* United States (2 Ct. Cust.

Appls., 471; T. D. 32226). The remaining class of merchandise covered by that appeal, together with that the subject of the other appeals stated, was claimed by the importers to be properly dutiable as herrings at the rate prescribed, according to condition, as provided for in paragraph 272 of said act, which reads as follows:

272. Herrings, pickled or salted, smoked or kippered, one-half of one cent per pound; herrings, fresh, one-fourth of one cent per pound; eels and smelts, fresh or frozen, three-fourths of one cent per pound.

The weights and condition of the merchandise covered by the protests were duly set out in the opinion of the Board of General Appraisers in accordance with stipulations found in the record and need not here be repeated.

Eliminating these descriptive details there is presented to this court for decision the one question whether or not the various descriptions of fish above given are "herrings" as that term is used in paragraph 272 of the tariff act of 1909.

The relative specificity of the provisions of the two competing paragraphs, 270 and 272, and the scope of each has been the subject of previous decisions of this court. United States v. Rosenstein (1 Ct. Cust. Appls., 304; T. D. 31357); Ahlbrecht & Son v. United States (2 Ct. Cust. Appls., 471; T. D. 32226); United States v. Smith & Nessle Co. et als. (4 Ct. Cust. Appls., 70; T. D. 33312); United States v. Haaker & Co. et als. (4 Ct. Cust. Appls., 471; T. D. 33884). It may therefore be regarded as settled that the term "herrings" as used in paragraph 272 is more specific than the term "fish   *   *   * packed in   *   *   *   tin boxes, or cans" as used in paragraph 270.

That being regarded and treated as *stare decisis* the Government undertook at the trial below to show that the term "herrings" as used in paragraph 272 was employed in a commercial sense and that it should be applied to a certain, uniform, and definite class of fish which excluded those enumerated as the subjects of these appeals. The board found that the proof offered by the Government failed to establish such a commercial understanding or usage. An examination of the record discloses that this finding of the board is amply justified by the testimony in the case. Indeed, every witness produced by the Government in his testimony seemed rather to dispute than to establish any such uniform and general trade understanding or usage.

We are therefore left to determine whether or not the word "herrings," as used in paragraph 272, in its common and ordinary acceptation includes the above enumerated fish, the subject of these appeals.

While the trade testimony introduced by the Government failed to establish a general, uniform usage which assigned to the word

"herrings" a definite class of fish, which excluded therefrom sprats, sardines, and anchovies, the testimony offered did establish *pro tanto* that among merchants dealing for many years in these variously named fish it was commonly understood by them that the sardines, anchovies, and sprats imported into this country and put up in the manner as was this imported merchandise are all deemed to belong to the class of fish commonly known as herrings. It is unnecessary for the purposes of this case to analyze in detail the testimony in the record, the result of which would be but an extended and unprofitable review of evidence which amply, and we think unquestionably, supports the above statement.

The record contains also much evidence as to the scientific understanding of the relationship of the respectively enumerated fish. Some of the controversy was had by reason of the inaccuracy of the record in the first instance to properly express the scientific testimony given by one of the witnesses who is a recognized authority upon the subject. Corrections have been made by stipulation of the respective parties and presented as a part of the record in this court, and when examined in connection with the recognized standard works on the subject, pertinent excerpts from which were likewise properly introduced in the case, a general and uniform result is produced. The herring is scientifically known as a *Clupeidae*. That is the family name. Included within this family name are different genera of *Clupeidae* or *Clupea*, which in turn respectively embrace various species. Thus, there is the *Clupea spratus*, which is a specie of herring known as the bristling or sprat. These imported anchovies seem to be but bristlings or sprats put up in a certain way. The *Clupea pilchardus*, or pilchard, which comes from the Mediterranean and is the true sardine, while classed by some authorities as of the genus *Clupanodon* and others *Clupea* nevertheless comes in the *Clupeidae* or herring family. So there is the *Clupea* herrings and *Clupea pallassi* or California herring—all of the *Clupeidae* or herring family. Upon the whole it satisfactorily appears from the record that all the classes of fish covered by these importations are of the herring or *Clupeidae* family.

Lexicographic authority brings us to the same conclusion. Thus sardines are defined in the Standard Dictionary as—

One of various small clupeoid fishes preserved in oil as a delicacy, especially the European pilchard (*Clupea pilchardus*). * * * The young of the herring * * *.

Likewise the sprat is mentioned in the Standard Dictionary as the young of the herring.

The briefs in this court refer *in extenso* to the departmental holdings upon this subject. They, likewise, with much industry and thoroughness review the decisions of the Board of General Appraisers

and of the courts. While there may be found some expressions of divergence from that view, upon the whole it quite uniformly appears to have been held for a long period of time by the department, the Board of General Appraisers, and the courts that the word "herrings" as used in many preceding tariff acts included sprats, sardines, and anchovies. Whatever may be said in criticism of the completeness of the uniform trade references, or the scientific understanding, or the departmental and judicial view upon the subject, there seems to be no escape from the conclusion that it is fairly established by a great preponderance of the evidence in the record and emphasized throughout these various sources that in common understanding the word "herrings" includes the various species of fish as imported in these cases.

We are the more impressed with this conclusion and that it was the view taken by the Congress upon the enactment of the respective paragraphs of the tariff law under consideration by a reference to "Notes on Tariff Revision." With these notes before it for information and guidance the Congress enacted the respective competing provisions of the tariff act under consideration.

Under the head of general information, at page 318, "Notes on Tariff Revision," it is stated:

The *anchovy* is a small, richly flavored, herring-like fish caught in the waters of southern Europe. * * *

The *sprat* is a small European herring, also called garvie. It is allied to the common herring and sardine or pilchard.

*Bristlings* are a small European herring, usually brought into this country canned, and probably sold as sardines or sardelles.

It is significant that in the corresponding paragraph of the tariff act of 1897, which was paragraph 258, paragraph 270 read:

Fish known or labeled as anchovies, sardines, sprats, bristlings, sardels, or sardellon, * * *.

With the above-quoted information before them Congress omitted these enumerations of fish from the act of 1909. Under the circumstances, with the information above quoted before them, taken in connection with the decisions of the courts, Board of General Appraisers and departmental rulings, of which they are deemed to take notice, there would seem to be no escape from the conclusion that by striking these words from the paragraph providing for fish packed in tin boxes or cans Congress must have known and intended that such importations would thereafter fall within the provision for herrings in paragraph 272, and we are of the opinion that upon the whole Congress so contemplated.

*Affirmed.*