(C. D. 928)

GORTON PEW FISHERIES CO., LTD. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 13, 1945)

*Tompkins & Tompkins* (*Henry L. Ziegel* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before OLIVER and COLE, Judges

COLE, Judge: Gorton Pew Fisheries Co., Ltd., of Gloucester, Mass., imported from Callao, Peru, a shipment invoiced as "frozen bonita," which was entered at the port of New York and classified under paragraph 717 (a) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 717 (a)) as frozen fish, not specially provided for, duty being assessed accordingly at 1 cent per pound. Plaintiff claims the merchandise is entitled to free entry under paragraph 1756 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1201, par. 1756) as tuna fish. Protest is also directed against the weight of the merchandise, but the claim for a lower weight than that upon which the assessment was based was not pressed either at the trial or in the briefs.

Plaintiff's case has been presented on the premise that the imported bonito is in fact tuna fish and therefore should be classified under the *eo nomine* designation therefor in paragraph 1756, *supra*. The contention is based on the common meaning of the terms, no attempt having been made to establish commercial designation.

The record, consisting of oral testimony of plaintiff's food technologist and its sales representative, as well as pertinent departmental regulations and illustrative commercial labels, supports the following factual foundation. Bonito, weighing between 10 and 12 pounds and costing approximately $8.50 a case, is smaller and less expensive than tuna, which ranges from 50 to 150 pounds and is priced at $14.50 a case. Both are processed in the same manner and packed in the same size containers. The nature of the processing is not disclosed. Nor is there anything in the record to show whether the method of processing is peculiar to the fish under consideration. After bonito and tuna are processed, the only visual distinction between them is color. When commercially packed, each is labeled under its specific name, a practice made mandatory by regulations of the Department of Agriculture (Bureau of Chemistry Service and Regulatory Announcements No. 26), issued on December 30, 1920. Item 346 thereof, entitled "Notice to Packers of Tuna and Similar Fish" (plaintiff's illustrative exhibit A), shows six categories, setting forth in one column the "Species" and in another "Common Names Which May Be Used On Labels." "Tuna" and "Bonito" appear in separate and distinct classes. Commercial labels (plaintiff's illustrative exhibits B, C, and D), each bearing the specific name, either bonito or tuna, give full effect to said regulations. The one used for packing tuna (plaintiff's illustrative exhibit D) includes the description "White Meat Albacore." "Albacore," it is noted, is included within the category of said regulations listing tuna. The testimony is positive that a label is used only for the particular kind named thereon. Equally emphatic are the witnesses' statements that under no circumstances would an order for tuna be filled with a shipment of bonito without an explanation to the purchaser and then the substitution would be made only upon acceptance by the buyer.

Counsel for plaintiff, in his brief, calls attention to references in the Summary of Tariff Information of 1929 that mention bonito in discussions relating to tuna. For instance, in the presentation of statistical information on "TUNA" (vol. 1, p. 1157), under the heading "Description and uses," bonito is referred to as one of "the closely related species," and after setting forth figures on production and selling prices, and describing "Competitive conditions," the compilation concludes with the following sentences: "The foregoing discussion relates to fish entitled to be labeled tuna in the United States. There is also a large production of the two related species, bonito and

yellowtail." Again in the same official publication (vol. 2, p. 2548), the tabulation showing the production of "Tuna, fresh, frozen, or packed in ice," presents the aggregate figures under the caption, "Tuna catch (including bonito and yellowtail)."

Plaintiff argues that this association of the terms makes it "evident that bonito is included with tuna," citing *United States* v. *Miller & Tokstad et al.*, 5 Ct. Cust. Appls. 256, T. D. 34443. That case arose under the Tariff Act of 1909 and the question in controversy was whether sprats, sardines, and anchovies were classifiable under the general provision for "Fish * * * packed in * * * tin boxes, or cans," or within the *eo nomine* designation "herring." In the course of its decision, the court referred to "Notes on Tariff Revision," containing information to the effect that the anchovy and the sprat are European herrings, and that the sprat is allied to the common sardine. Coupling these descriptions with the fact that the earlier act of 1897 contained the specific provision for "Fish known or labeled as anchovies, sardines, sprats, *. * *," which was not reenacted in the subsequent act of 1909, and attributing to the legislators knowledge of court decisions and departmental rulings, the court concluded that "Congress must have known and intended that such importations would thereafter fall within the provision for herrings in paragraph 272, and we are of the opinion that upon the whole Congress so contemplated." There is no comparable legislative history concerning the provision for "tuna fish," which, as it appears in paragraph 1756, *supra*, is a reenactment of the provision therefor in paragraph 1656 of the Tariff Act of 1922.

The most favorable view to plaintiff that can be taken of the quotations from the Summary of Tariff Information of 1929 is that bonito and tuna belong to the same genus of fish, which finds support in lexicographic authorities. Funk & Wagnalls New Standard Dictionary defines the two species as follows:

> *bonito.* One of the various large scombroid or mackerel-like fishes: (1) A scombroid (genus *Sarda*), steel-blue, with oblique blackish stripes. The common bonito (S. *sarda*) is about 2 feet long, and is found on both coasts of the Atlantic. (2) A scombroid (genus *Gymnosarda*), as *G. pelamis* of tropical seas, bluish with four brownish stripes, and about 3 feet long. (3) The frigate-mackerel or plain bonito.
>
> *tuna.* A tunny.
>
> *tunny.* A large oceanic scombroid fish of *Orcynus* or a related genus, especially the *great tunny* (*O. thynnus*) of the Atlantic, dark-blue above and dusky spotted with silver below, which sometimes attains a length of 15 feet and a weight of 1,500 pounds.

Van Nostrand's Scientific Encyclopedia sets forth the following descriptions:

> *bonito.* * * * Marine fishes (*pisces*) of several species related to the mackerel and tuna.

*Tuna, Tunny.* * * * A large marine fish *Thunnus thynus*, of the mackerel family. It attains a maximum weight of more than 1500 pounds and is highly valued both as a game fish and for food.

The Encyclopaedia Britannica contains the following:

*BONITO* (Sarda sarda), a fish of the mackerel family, abundant in the Mediterranean and in the warmer parts of the Atlantic ocean. It is similar in form to the tunny (q. v.), but is a smaller fish, not exceeding 30 in. in length. The colour is steel blue above, silvery below, with numerous narrow dark stripes running obliquely downward and forward from the back. The name is given to *S. chilensis* of the Pacific ocean and to the little tunnies (Gymnosarda).

*TUNNY* (Thunnus thynnus) the largest fish of the mackerel family, reaching a length of over 10 ft. and a weight of 1,500 lb. It is robust in form, bluish above, grey spotted with silver below. The tunny is found in all warm seas, and periodically approaches the coasts; it feeds on other fishes. It is excellent as food. In the Mediterranean especially, the fishing is extensive.

The sport of catching tunny or "tuna" with rod and line from motor-boats originated at Avalon, Calif., and has spread to New Zealand and Europe. At Avalon the Tuna Club regulates the weight of rod and strength of line, and the capture of a large fish may occupy several hours.

The definitions in Webster's International Dictionary, Second Edition, Unabridged, 1940, quoted in plaintiff's brief, are as follows:

*bonito.* Any of several marine fishes; esp., (a) Any of certain robust and active species allied to the mackerel; as: (1) The skipjack *Sarda sarda*, an abundant though rather poor food fish of the Atlantic coasts; also, a closely related species, esp. *S. chilensis* of the Pacific. They grow to a length of two or three feet, and are bluish with black oblique stripes.

*tuna.* Also tuna fish. (1) A tunny, esp., on the California coast, *Thunnus saliens*, and on the Florida coast, *Neothunnus allisoni*, both species prized as game and food fishes.

*tunny.* Any of several oceanic mackerellike fishes of the family Thunnidae, esp. *Thunnus thynnus*, sometimes distinguished as *great tunny*, found in all warm seas; a tuna. * * * It sometimes reaches a length of ten feet, and a weight of a thousand pounds or more, and is extensively caught in the Mediterranean. On the Northern Atlantic Coast of America a closely allied species (*T. secundodorsalis*) is called *horse mackerel;* on the Pacific coast, a third species (*T. saliens*) is much sought for as a game fish. The flesh is coarse and oily, but is often eaten; the oil, esp. from the liver, is sometimes used in currying leather. The *little tunny (Gymnosarda alleterata)* of the Mediterranean and North Atlantic, and the *long-finned tunny,* or albacore (see albacore), are smaller species.

If the foregoing citations were to be accepted as controlling, it might well be that the tariff classification for bonito would be "mackerel," paragraph 717 (a) of the Tariff Act of 1930, for under these definitions it is closely related to that genus of fish. The same is true of tuna, except for the specific provision therefor, paragraph 1765, *supra.* It is the alliance of the two species to the one general family that creates in both innate characteristics from which the resemblance is drawn. But these standards are based on scientific truths which are not material to the present issue for it is well established that tariff acts are not written in terms of science but in those of com-

merce, presumptively the language in common use, *Hummel Chemical Co.* v. *United States*, 29 C. C. P. A. 178, C. A. D. 189.

For all practical purposes, bonito is a definite and distinct commercial commodity. The trade accepts it as such. Food and drug authorities insist upon its recognition, separate and apart from all other commercial fish products. Its likeness of taste and identical use—as food in salads and sandwiches—with tuna, are elements of similarity that exist among several varieties of wholly unrelated kinds of fish. Nor is it material that bonito is displayed in retail stores on a counter that includes "Tuna Fish, Sardines, Canned Crab." The important condition is that bonito is commercially regarded as a specific kind of fish and so packed. True, it may be taken instead of tuna when the latter is not available or possibly because of the price differential. But bonito is not tuna. *Meyer & Lange* v. *United States*, 6 Ct. Cust. Appls. 181, T. D. 35436, supports this conclusion.

The protest is overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.