(C. D. 1862)

Arnold Sorensin Co., Inc.
Rohner Gehrig & Co., Inc. } *v.* United States

United States Customs Court, First Division

(Decided March 26, 1957)

*Lane, Young & Fox (William Whynman* of counsel) for the plaintiffs.
*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil* and *Murray Sklaroff*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The imported merchandise in this case consists of certain fish, designated as "DANISH SPRATS in Oil" on the commercial invoice and "SPRATS in Oil" on the consular invoice. The collector classified the importation under paragraph 718 (a) of the Tariff Act of 1930 as fish in oil and levied duty thereon at the rate of 30 per centum ad valorem. Under the protest, the importer claims the involved product properly classifiable under paragraph 718 (a), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, supplemented by Presidential Proclamation, T. D. 52782, as—

Sardines, smoked, but neither skinned nor boned, and valued
   over 18 but not over 23 cents per pound, including the
   weight of the immediate container_____ 15% ad val.

or, alternatively, under the same paragraph, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by Presidential proclamation, T. D. 51954, as—

Sardines, neither skinned nor boned but otherwise prepared -
   or preserved in any manner, when packed in oil or in oil
   and other substances:

    *      *      *      *      *      *      *

   Valued at over 23 cents per pound, including the weight
    of the immediate container_____ 15% ad val.

It was stipulated between the parties in open court that the fish in question are smoked and packed in oil; that their weight is immaterial; that "a sardine is a species of fish and belongs to the herring family, which is known as Clupea or Clupeial"; and that "the merchandise before the Court belongs to the species of the family herring known as Clupea Sprattus, and which species includes bristles or sprats." It was further agreed that there is no question of commercial designation involved in this case and that the sole issue for determination by the court is whether or not the imported canned fish consists of sardines. Four witnesses testified on behalf of the plaintiffs, and the defendant rested without the introduction of any testimony.

Arthur A. Omanoff, vice president of the plaintiff, Arnold Sorensin Co., Inc., testified that for several years he had represented Arnold Sorensin Co., Inc., in purchasing fish from foreign countries and in selling the involved imported product throughout the United States; that, in his experience, he had sold such fish as sardines, tuna fish, salmon, and mackerel. Upon the question of his understanding of the meaning of the term "sardine," Mr. Omanoff testified as follows:

Q. Will you state what you understand the term sardines to mean during your experience?

\*     \*     \*     \*     \*     \*     \*

A. Sardines are a term in general that applies to young or immature edible herring, which includes Clupea Sprattus, Clupea Harangas, sardinis pilchardus.

Q. Those are some of the scientific names, what are some of the common names?—A. Pilchards, sardines, sprats, anchovies.

Q. What else?—A. Norwegian type sild sardines, anchovies.

Q. Did you ever hear of the word bristles?—A. Yes, bristles or silds. (R. 9–10.)

\*     \*     \*     \*     \*     \*     \*

Q. You say that bristlings or bristling sardines were also included with the term sardines that you mentioned?—A. That's right. (R. 10.)

The witness then identified plaintiffs' exhibit 1 as representative of the imported merchandise and plaintiffs' illustrative exhibit 2 as manufactured in the same cannery as plaintiffs' exhibit 1 (R. 10–11). He then stated that, in 1951, 1952, and 1953, he had visited the manufacturing plant in Denmark where he had observed the processing of fish, such as that contained in plaintiffs' exhibit 1 and plaintiffs' illustrative exhibit 2, stating, in this connection, that on each of his visits the processing of such fish was the same. The witness, describing the process, testified as follows:

A. I watched the fish brought into the cannery and it was put on trays and spears put through the eyes of the fish and it was hung up and smoked in ovens; some of them were light smoked and they took them out, removed the heads, placed them in cans, added salt and oil, and then it goes through a sterilizer and then they are labeled as bristlings, it is in a rectangular tin; a little while later they take out the sprats after they are smoked enough and place them in round tins and add oil and salt and seal them and sterilize them and label them as sprats.

CHIEF JUDGE OLIVER: The same process is used with the bristling as is used with the sprats?

WITNESS: Yes.

CHIEF JUDGE OLIVER: Is there any difference between a bristling and a sprat?

WITNESS: The sprat is a little longer in the smoking, it is golden in color whereas the bristlings are silver.

CHIEF JUDGE OLIVER: But they start with the same identical fish?

WITNESS: Yes, and use the same baskets.

CHIEF JUDGE OLIVER: And the only difference is in the length of the smoking?

WITNESS: That's right. (R. 12–13.)

Plaintiffs' second witness, Bernard Yezer, testified, in part, that he had imported bristling sardines and sprats from Denmark and from Latvia and Poland "in the old days." He stated that he had imported fish, such as plaintiffs' exhibit 1 and plaintiffs' illustrative exhibit 2, from the same cannery, and that, based on his experience, there is not any basic difference between the two products. Corroborating testimony of plaintiffs' previous witness, Mr. Yezer stated that the only difference is in the amount of time employed in smoking each of the products; that a "sprat" has a golden-brown color, whereas the "bristling" has a light smoke to it (R. 24–25). The witness then described a sardine as "any small immature herring, generally known in the trade as a sardine," such as "the sea herring, the California pilchardus, the European pilchardus, the Clupea sprattus," which latter term, he stated, includes bristlings or sprats.

Under cross-examination, however, the witness admitted that he did not sell sprats under the name of sardines, but stated that, in his opinion, a sprat is a sardine. He conceded "that one is offered for sale labeled and sold as a sprat and the other is offered for sale and labeled as a bristling sardine," and that he would not "accept as good delivery for sprats, bristling sardines," and would not "accept as a good delivery for bristling sardines, sprats" (R. 28).

The testimony of plaintiffs' other two witnesses, Julius Reede and Erik Jacobsen, added nothing at variance with the evidence of the first two witnesses.

Both parties proceeded upon the theory that the contents of plaintiffs' illustrative exhibit 2 consists of sardines, and that the merchandise, if imported, would be properly classified and assessed under the designation of sardines. The plaintiffs contend that exhibit 1 is also sardines, while the Government claims that exhibit 1 (sprats) is a different product than illustrative exhibit 2, because it is smoked longer, and also because it is sold in the trade under the name of "sprats." It must be conceded also, based upon the uncontradicted testimony, that the fish contained in plaintiffs' exhibit 1 and illustrative exhibit 2 are processed from fish identical in all particulars. It would seem to follow, therefore, that, if the imported merchandise, plaintiffs' exhibit 1, known as sprats, were smoked for the same period of time as the fish in plaintiffs' illustrative exhibit 2 and were sold under the name of sprats, the imported product would be properly classified and assessed as sardines, rather than as other fish in oil. Surely, if fish identical in the raw state were processed and canned in precisely the same manner, and then separated into lots 1 and 2, and lot 1 labeled and sold as sprats, and lot 2 labeled and sold as bristlings, two separate tariff classifications would not be warranted. Does the fact that plaintiffs' illustrative exhibit 2 was smoked for 3 to 4 minutes and labeled "bristling sardines," while plaintiffs' exhibit 1 was smoked

7 to 10 minutes and sold under the name "sprats" mean that, for tariff purposes, the lightly smoked product remains a sardine, while the other more intensely smoked product is changed to the general item "fish"?

Since it has been conceded by both parties that there is no question of commercial designation involved in this case, the common meaning of the term "sardine" must control. According to the undisputed testimony of competent witnesses in this record, a sprat is generally considered to be a sardine among fish dealers. This view is corroborated by lexicographic authorities. Webster's New International Dictionary, unabridged, second edition, 1956, defines some of the terms involved in this case as follows:

**brisling,** *n.* [Nor.] A small sardinelike European fish which is packed in oil for food. (Page 338.)

**sprat,** *n.* **1 a** A small European herring (*Clupea sprattus*) closely allied to the common herring and the pilchard. The name is also applied to other small herrings. (Page 2439.)

**sardine,** *n.* **1.** The young of the pilchard (*Sardinia pilchardus*) when of a size suitable for preserving in oil or tomato sauce for food; also, any of certain closely related and similar species. The true sardine occurs only in European waters, but others are found in America, as *S. caerulea* of the Pacific coast and *S. anchoria* of the West Indies. **2.** Any of various small or immature fishes resembling the true sardines or similarly preserved for food; as: **a** In the eastern United States, the young of the common herring or of the menhaden. **b** In North Carolina, an anchovy (*Anchoviella epsetus*). (Page 2217.)

**pilchard,** *n.* **a** A herringlike fish (*Sardinia,* or *Sardinella, pilchardus*) which occurs in great schools along the coasts of Europe. It reaches a length of eight or ten inches and is extensively used for food. The young are known as *sardines.* **b** Any of several related fishes, as in Australia, *Sardinella sagax* which visits the shores in large schools. (Page 1861.)

**herring,** *n.* A very valuable food fish (*Clupea harengus*) of the order Isospondyli which reaches a length of about one foot, and is extraordinarily abundant in the temperate and colder parts of the North Atlantic, swimming in schools which sometimes contain hundreds of millions of individuals. * * * Enormous numbers of them are caught in nets, the adult being preserved by smoking or salting, and on the American coast the young are extensively canned and sold as sardines. * * * The name *herring* is extended, usually with some qualifying word * * * to many members of the family Clupeidae (which see), of which the common herring is the type, and is used as a general name for the members of that family. It is also extended to some fishes of other families more or less similar to the true herring. (Page 1170.)

**Clupea,** *n. Zool.* A genus comprising the typical herrings. (Page 509.)

**Clupeidae,** *n. Zool.* A large family of soft-finned teleost fishes, including the herrings, sardines, shads, menhaden, etc. (Page 509.)

The Encyclopaedia Britannica, volume 19, page 993, 1947 edition, refers to the term "sardine" as follows:

**SARDINE,** the young of the pilchard, and also used for other related small herrings when similarly preserved in oil.

In volume 17, at page 925, the same authority used the name "pilchard" and the term "sardine" synonymously as follows:

**PILCHARD** or **SARDINE** (*Sardina pilchardus*), a fish of the herring family, found on the Atlantic coasts of Europe north to the English Channel, and represented in the Mediterranean by a smaller race (*S. pilchardus sardina*). The genus *Sardina* includes also *S. sagax* of Japan, California, Chile and South Africa, and *S. neopilchardus* of southern Australia and New Zealand. These resemble the European pilchard * * *. Pilchards swim in large shoals and feed on minute pelagic animals; * * *. In Cornwall adult fish, about 10 in. long, are caught and are salted in barrels. The sardine industries of France and Portugal depend on smaller fish, which are tinned in oil. Tinned Californian pilchards and Japanese sardines are also important products.

In the 1929 Summary of Tariff Information, at page 1153, the following information is given concerning the term "sardine":

**Description and uses.**—The term "sardine" is applied to certain small or immature fish of the herring family (Clupeidae) when processed in oil or in sauces.

Although it is the general practice to use only small or immature fish, averaging from 3 to 5 inches in length, fish up to 10 or 12 inches in length are not infrequently canned under the designation of sardines. The principal species used are sea herring or sild, California pilchard, European pilchard, Japanese sardine, and European *bristling or sprat*. The fish are marketed in hermetically sealed, sterilized tins. [Italics ours.]

It seems clear that the raw fish used in plaintiffs' exhibit 1 and illustrative exhibit 2 come within the scope of the foregoing definitions of sardines and that the terms "bristling" and "sprat" are sometimes used interchangeably.

The plaintiffs, in their brief, quote at length from the case of *Miller & Tokstad et al.* v. *United States*, 25 Treas. Dec. 295, T. D. 33815, affirmed in *United States* v. *Miller & Tokstad et al.*; *United States* v. *Moos & Co. et al.*; *United States* v. *Strohmeyer & Arpe Co.*, 5 Ct. Cust. Appls. 256, T. D. 34433. The appeals involved three different cases and different kinds of fish: Fish described in the invoices as "sardines put up in bouillon, tomato sauce, vinegar, or mustard sauce"; fish consisting of "sprats and smoked sardines in tomato sauce in tins"; and "sprats in tomato sauce and anchovies salted and spiced in tins." The merchandise in all the cases was classified under paragraph 270 of the Tariff Act of 1909 as "fish * * * packed in * * * tin boxes, or cans." The question therein involved was whether or not the term "herrings," as used in paragraph 272 of the Tariff Act of 1909, in its common and ordinary acceptation, included the involved fish. The appellate court pointed out that—

The relative specificity of the provisions of the two competing paragraphs, 270 and 272, and the scope of each has been the subject of previous decisions of this court. United States *v.* Rosenstein (1 Ct. Cust. Appls., 304; T. D. 31357); Ahlbrecht & Son *v.* United States (2 Ct. Cust. Appls., 471; T. D. 32226); United States *v.* Smith & Nessle Co. *et als.* (4 Ct. Cust. Appls., 70; T. D. 33312); United States *v.* Haaker & Co. *et als.* (4 Ct. Cust. Appls., 471; T. D. 33884). It may

therefore be regarded as settled that the term "herrings" as used in paragraph 272 is more specific than the term " fish * * * packed in * * * tin boxes, or cans" as used in paragraph 270.

After observing that the Government had failed to establish its contention for commercial designation, the appellate court went on to hold that the word "herrings," as used in the Tariff Act of 1909, *did not exclude* such terms as sprats, sardines, and anchovies and held that all such fish were classifiable as herrings. The court further stated:

> * * * The herring is scientifically known as a *Clupeidae*. That is the family name. Included within this family name are different genera of *Clupeidae* or *Clupea*, which in turn respectively embrace various species. Thus, there is the *Clupea spratus*, which is a specie of herring known as the bristling or sprat. These imported anchovies seem to be but bristlings or sprats put up in a certain way. The *Clupea pilchardus*, or pilchard, which comes from the Mediterranean and is the true sardine, while classed by some authorities as of the genus *Clupanodon* and others *Clupea* nevertheless comes in the *Clupeidae* or herring family. So there is the *Clupea* herrings and *Clupea pallassi* or California herring—all of the *Clupeidae* or herring family. Upon the whole it satisfactorily appears from the record that all the classes of fish covered by these importations are of the herring or *Clupeidae* family.

The appellate court also quoted from "Notes on Tariff Revision" as follows:

> The *sprat* is a small European herring, also called garvie. It is allied to the common herring and sardine or pilchard.
>
> *Bristlings* are a small European herring, usually brought into this country canned, and probably sold as sardines or sardelles.

It appears clear that the appellate court in the *Miller & Tokstad* case, *supra*, saw no distinction between bristlings and sprats at the time of the foregoing decision, although at that time there was no specific provision in the tariff law for sardines. The court observed, however, that—

> It is significant that in the corresponding paragraph of the tariff act of 1897, which was paragraph 258, paragraph 270 read:
>
>> Fish known or labeled as anchovies, sardines, sprats, bristlings, sardels, or sardellon, * * *.

The court, therefore, concluded that when Congress omitted the foregoing specific enumeration of anchovies, sardines, sprats, etc., from the paragraph providing for fish, packed in tin boxes or cases, it must have intended that "Such importations would thereafter fall within the provision for herrings in paragraph 272."

Under paragraph 718 (a) of the Tariff Act of 1930, as modified by the pertinent trade agreements, we have a specific enumeration for sardines. The same rate applies to sardines "valued over 18 but not over 23 cents per pound" and sardines "valued at over 23 cents per pound." The *Miller & Tokstad* case, *supra*, relied upon by the plain-

tiffs, while not controlling herein, is instructive in determining what type of fish may be considered as sardines for tariff purposes.

Plaintiffs, in their brief, argue that, since the term "sardines" includes the imported merchandise, the product is more specifically provided for under the provisions of paragraph 718 (a), as modified, *supra*, for "Sardines, neither skinned nor boned * * * when packed in oil * * * Valued at over 23 cents per pound, including the weight of the immediate container," than it is under the general provision for other fish in oil. In support of this contention, plaintiffs cite *Knauth, Nachod & Kuhne* v. *United States*, 4 Ct. Cust. Appls. 58, T. D. 33307, and *Neuman & Schwiers Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 64, T. D. 33310. In the *Knauth* case, *supra*, the merchandise was invoiced as "dull black lining calf leather," and the importation was held to be more specifically provided for as "calf-skins tanned or tanned and dressed" than as "grain leather." In the *Neuman* case, *supra*, the importation was made up of cured and cooked hams packed in "hermetically sealed tin cans" after the removal of the bone. This merchandise was held to be more specifically provided for *eo nomine* under the provision for hams in paragraph 284 of the Tariff Act of 1909 than under the provision for prepared or preserved meats in paragraph 286 of said act. In *Nootka Packing Co. et al.* v. *United States*, 22 C. C. P. A. (Customs) 464, T. D. 47464, cited by the plaintiffs, the involved merchandise consisted of "minced razor clam meat, in cans, packed in British Columbia, Canada," and was classified by the collector under paragraph 721 (b) of the Tariff Act of 1930 as "clams * * * packed in air-tight containers." The importers claimed the goods to be duty free under paragraph 1761 of the Tariff Act of 1930 as shellfish, prepared or preserved. The court therein held the merchandise properly dutiable, as classified, pointing out that "The mere mincing of the clams, or cleaning them, or cooking them, does not remove them from the designation of clams." Among other things, the court held as follows:

* * * It will be observed that this language is not restricted to clams in their raw or natural state, nor is it restricted to entire clams. It includes any clams in any condition, so long as they are clams. "Where a dutiable provision names an article without terms of limitation all forms of the article are thereby included unless a contrary legislative intent otherwise appears."

The principle announced by our appellate court in the *Nootka Packing* case, *supra*, is equally applicable here. See also *Crosse & Blackwell Co.* v. *United States*, 36 C. C. P. A. (Customs) 33, C. A. D. 393. In the case at bar, the claimed provisions are for "Sardines, smoked, but neither skinned nor boned," and "Sardines, neither skinned nor boned but otherwise prepared or preserved in any manner, when packed in oil or in oil and other substances."

The defendant points out that tariff acts are not written in the language of science but in terms generally and commonly understood

in commerce and in common use. That proposition, of course, is sound and requires no citation of cases. The question before us is, what is the common or tariff law meaning of the term "sardines"? Admittedly, the question of commercial designation is not here involved. The defendant, after conceding that the sprats represented by plaintiffs' exhibit 1 unquestionably fall under the general classification of sardines, argues that, inasmuch as the evidence indicates that the imported sprats are not sold under the specific name of sardines, they are, for tariff purposes, an entirely different class of merchandise from bristlings, which are sold as sardines. However, these facts are not controlling, but are merely part of the evidence to be considered in concluding whether the sprats now under consideration under the tariff law are to be classified as sardines or under the general classification of fish in oil.

The defendant directs attention to the case of *B. R. Anderson & Co. v. United States*, 10 Cust. Ct. 148, C. D. 740, known as the "stockfish" case. In that case, it was admitted that certain merchandise consisted of dried, unsalted codfish. However, the product was known in the trade of the United States at the time of the enactment of the Tariff Act of 1930 as stockfish. The court, therefore, held that, since commercial designation was not established, the use of the term "stockfish," in referring to the unsalted codfish, did not remove the merchandise from coming under the tariff provision for "Fish, dried and unsalted: Cod, haddock, hake, pollock, and cusk." Neither in this case does the use of the term "sprat" or the smoking, hereinbefore explained, remove plaintiffs' exhibit 1 from the category of sardines under paragraph 718 (a) of the Tariff Act of 1930, as modified, *supra*.

For the reasons stated aforesaid, the involved merchandise is held properly dutiable under paragraph 718 (a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802 and T. D. 51954, as "Sardines, neither skinned nor boned * * * when packed in oil" at the rate of 15 per centum ad valorem, as claimed. The protest is sustained. Judgment will be rendered accordingly.